IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:20cr234 |
| | ) | |
| DANIEL TYLER WALKER, | ) | Hon. Claude M. Hilton |
| | ) | |
| Defendant. | ) | Hearing Date: March 26, 2021 |

### United States' Sentencing Position

The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its position with respect to sentencing for defendant Daniel Tyler Walker ("Walker"). The United States request that the Court adopt the findings of the Pre-Sentencing Investigation Report ("PSR"), resulting in an advisory Guidelines range with respect to incarceration of 30–37 months.[1] Based on the advisory Guidelines range, the § 3553(a) factors, and the reasons stated in the government's sealed motion, a sentence of 20 months is sufficient, but not greater than necessary, to account for each of the § 3553(a) factors in this case.

In particular, a sentence of 20 months appropriately captures the seriousness of the defendant's decision to engage in a conspiracy to receive kickbacks and to unlawfully benefit from steering prescriptions to various pharmacies in exchange for compensation to which he was not entitled—a scheme that netted the defendant more than $670,000. Moreover, a sentence of 20

---

[1] Included in the PSR's advisory Guidelines calculations is a three-level decrease for acceptance of responsibility. In this respect, the United States agrees with the PSR that the defendant qualifies, pursuant to U.S.S.G. § 3E1.1(a), for a two-level reduction. In addition, the defendant timely notified the United States of his intention to plead guilty, thus permitting the United States to avoid preparing for trial and to allocate its resources more efficiently. Accordingly, the United States hereby moves, pursuant to § 3E1.1(b), to decrease the defendant's offense level by one additional level.

1

months is necessary to provide general deterrence of fraud schemes, like this one, which are often hard to detect and can cause considerable losses to health care benefit programs, as well as beneficiaries. Accordingly, the United States requests that this Court impose a sentence of imprisonment of 20 months, a period of supervised release of three years, and full restitution and forfeiture as described in greater detail below.

I.      **Factual Background**[2]

Walker, a 50-year-old Delaware resident and Maryland native, has worked in the pharmaceutical sales industry for nearly 30 years.

From approximately August 2015 to April 2017, the defendant worked as a pharmaceutical sales specialist for Pharmaceutical Company A. In that role, Walker was responsible for marketing to health care providers and pharmacies a naloxone auto-injector device ("naloxone device") that was used for treatment in opioid emergencies. Walker marketed this naloxone device to pharmacies run by Mohamed Abdalla ("Abdalla"),[3] a pharmacist licensed in the Commonwealth of Virginia. These pharmacies—Royal Care Pharmacy ("Royal Care"), Millennium Pharmacy ("Millennium"), and Pharmacy at Great Falls ("Great Falls")—were located within the Eastern District of Virginia and filled prescriptions for patients' medications. Abdalla employed Tariq Amin ("Amin")[4] who served as Royal Care's general manager, and who was responsible for overseeing the day-to-day operations of the pharmacy.

---

[2] The PSR and the Statement of Facts signed by the defendant (Doc. No. 7) adequately set forth the offense conduct in this case.

[3] In connection with this offense and others, Abdalla pleaded guilty on November 9, 2020, and will be sentenced by this Court on March 19, 2021.

[4] In connection with this offense and others, Amin pleaded guilty on November 10, 2020, and will be sentenced by this Court on March 26, 2021.

2

Beginning at least in or around August 2016 and continuing through at least in or around February 2018, Walker conspired with Abdalla and Amin to receive kickbacks and bribes to induce Walker to direct health care providers and others to refer patients to, and fill prescriptions through, Royal Care for this naloxone device. These prescriptions were billed to federal health care programs, including Medicare, Virginia Medicaid, Maryland Medicaid, and Tricare. In connection with this scheme, Walker and his co-conspirators entered into an agreement whereby Royal Care would compensate Walker 25 percent of all net sales of every prescription of the naloxone device Royal Care filled.

During the life of the conspiracy, Royal Care, Millennium, and Great Falls received payments of about $9,928.261.62 from the aforementioned federal health care programs for claims submitted for prescriptions associated with the naloxone device, resulting in profit for Royal Care, Millennium, and Great Falls of approximately $1,202,676.27.[5] For Walker's role in the conspiracy, he received $671,790.

After Walker was approached by the Government, he agreed to speak with law enforcement and admitted to his participation in the fraud scheme and admitted his culpability, including his knowledge that payments associated with the scheme came from various federal health care programs. On September 29, 2020, Walker pleaded guilty to one count of conspiracy to receive health care kickbacks, in violation of 18 U.S.C. § 371.

**II.    Guidelines Calculation**

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*,

---

[5] Because of ongoing audits, Royal Care, through Abdalla and others, diverted prescriptions for the naloxone device to Millennium and Great Falls.

3

543 U.S. 220, 264 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the PSR founded a base offense level of 8 and a 14-level increase for the value of the bribe of greater than $550,000 and less than $1,500,000. It also includes a 3-level reduction for the defendant's acceptance of responsibility and timely notification to the United States of his intention to plead guilty, resulting in a total offense level of 19. The guidelines range for this total offense level is 30–37 months.

### III. Section 3553(a) Factors

After calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense," "the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense," the need "to promote respect for the law," the need for the sentence "to afford adequate deterrence to criminal conduct" and the need to "provide restitution to any victims." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(7). As explained below, based on those factors, a sentence of 20 months is warranted, appropriate, and reasonable.

> A. *A sentence of 20 months is appropriate based on the nature, circumstances, and seriousness of the offense.*

Here, the defendant's crime was unquestionably serious. Indeed, it is a serious offense whenever a defendant uses his position for his own personal gain. And here, the defendant knew full well that what he was doing was wrong, and yet he continued to engage in a kickback scheme that appears, for all intents and purposes, to have been rooted in greed. Moreover, the defendant's crime was not the product of one mistake. Quite the contrary, for approximately a year and a half,

the defendant chose to accept kickbacks from his co-conspirators, and he chose to continue to steer prescriptions to Royal Care because he ultimately knew that he would benefit above and beyond his role as a pharmaceutical sales specialist. While it is undoubtedly true that this defendant may not have benefited as much as others, he nevertheless engaged in a protracted, kickback scheme that led to him receiving over $670,000 in funds to which he was not entitled—a corrupt bargain which Walker and his co-conspirators committed to writing.

Further, when the defendant's employer conducted an internal investigation related to his conduct, Walker denied any role in the kickback scheme. Despite his denials, Pharmaceutical A notified Walker on February 3, 2017, that he was not to engage in any conduct or communications that could even imply a kickback arrangement. Walker was also required to re-read and re-certify his understanding of his employer's healthcare compliance program, which included training on the federal anti-kickback statute. Despite these additional warnings and admonitions, Walker continue to engage in the fraud for at least another year, and he continued to lie to his employer.

Accordingly, given the length, scope, and seriousness of Walker's criminal conduct, a sentence of 20 months is warranted in this case.

> B. *A sentence of 20 months is appropriate in light of the defendant's personal history and characteristics.*

A sentence of 20 months is also appropriate in light of Walker's personal history and characteristics. Walker does not have any criminal history; however, he has been involved in the pharmaceutical sales industry since 1993. During that time, Walker no doubt understood the importance of conducting himself ethically and to follow the rules outlined for him by his various employers. And in this case, Walker betrayed that trust by choosing to engage in a scheme unbeknownst to his employer and to also lie to him to them about the nature of his activity.

Walker is a sophisticated, educated businessman who no doubt possessed the skills to live a law-abiding life. Nevertheless, he chose to engage in fraud and to knowingly violate the law. A sentence of 20 months is thus necessary to account properly for his personal history and characteristics.

      C.     *A sentence of 20 months is appropriate to promote respect for the law and afford adequate general deterrence of similar schemes.*

The need for general deterrence also warrants a sentence of 20 months. General deterrence is important in any white-collar case but is particularly important here because health care fraud crimes like Walker's are difficult to detect. Health insurance benefit programs rely on pharmacists to make truthful representations about services being provided and the reasons they are being provided. Similarly, they also rely on pharmacists and pharmaceutical representatives not to engage in self-dealing that results in some improper benefit being conferred upon the parties without the insurance companies' knowledge. These programs do not have the resources to investigate and verify that providers are complying with all applicable laws and rules. Moreover, health care fraud does not just harm the health care benefit programs – it harms the beneficiaries because higher health care costs increase the amounts that these individuals must pay over time for needed medications and services. While there is no evidence in this case that any patient harm occurred, the financial ramifications of this conduct were pervasive.

Ultimately, these types of crimes become a kind of cost-benefit analysis for the defendants, like this one, who determine whether the cost of getting caught outweighs the financial benefit of engaging in fraud. Walker chose to take that risk, and this Court should ultimately consider the importance of deterring other would-be Daniel Walkers from engaging in such conduct.

A term of imprisonment of 20 months is thus necessary to send a message to other potential fraudulent actors that crimes like this one that could result in significant financial harm will be met with an appropriate term of incarceration.

### IV. Restitution

The United States also asks that this Court impose restitution in the amount of $150,511.08, and that the Court direct forfeiture of assets, as required by the Plea Agreement. At sentencing, the Government will ask the Court to enter the restitution order and the consent order of forfeiture that will be provided to the Court and defense counsel prior to the hearing.

### V. Conclusion

For the reasons stated, the United States requests that this Court impose a term of incarceration of 20 months, as well as a period of supervised release of three years.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By: _____/s/_____
Monika Moore
Jamar K. Walker
Counsel for the United States
Assistant United States Attorneys
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: monika.moore@usdoj.gov
Email: jamar.k.walker@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on March 19, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

By: _____/s/_____
Jamar K. Walker
Counsel for the United States
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Ave
Alexandria, VA
Phone: 703-299-3700
Fax: 703-299-3981
Email: jamar.k.walker@usdoj.gov